# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **Tawni Bennett,** § § § § | |
| Plaintiff, § § | Civil Action No. Case 4:21-cv-00340-ALM |
| v. § § | |
| **Veterans Aid PAC, Inc.,** § § | **Jury Trial Demanded** |
| Defendant. § § § | |

## AMENDED COMPLAINT

**Tawni Bennett** (Plaintiff), by and through her attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Veterans Aid PAC, Inc.** (Defendant):

## INTRODUCTION

1. Plaintiff's Amended Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of Texas and because the occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the State of Texas.

4. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

5. Plaintiff is a natural person residing in Denton, Texas 76205.

6. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

7. Defendant is a business entity with principal place of business, head office, or otherwise valid mailing address at 2114 Deerpath Road, Aurora, Illinois 60506.

8. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**FACTUAL ALLEGATIONS**

10. At all times relevant hereto, Plaintiff resided in Denton, Texas.

11. At all times relevant hereto, Plaintiff maintained a cellular telephone which was assigned a "214" area code, the area code associated with the Dallas area.

12. Plaintiff uses this cellular telephone for residential purposes.

13. Defendant regularly solicits contributions in the State of Texas.

14. Defendant regularly directs agents to place calls to consumers in Texas.

15. Through the transmission of each of the aforementioned automated calls, Defendant knowingly and deliberately availed itself to this forum state.

16. Plaintiff has only used the subject telephone number as a personal cellular telephone.

17. Plaintiff did not consent to these telephone calls.

18. Plaintiff's cell phone number has been on the Do Not Call registry since

November 15, 2004.

19. When contacting Plaintiff on her cellular telephone, Defendant (directly and/or through its agents) used an automatic telephone dialing system and automatic and/or pre-recorded messages.

20. While Plaintiff was annoyed and aggravated by the calls, because the identity of Defendant was not immediately apparent, she engaged in attempted conversation with Defendant for investigative purposes and for the purpose of ascertaining Defendant's identity.

21. Each call that Plaintiff answered began with a pre-recorded voice or message.

22. Defendant placed calls to Plaintiff's cell phone ending in 0990 on dates including but not limited to: January 16, 2020, February 19, 2020, March 10, 2020 and March 11, 2020.

23. When Plaintiff answered the calls, it was apparent that Defendant utilized "soundboard technology" where pre-recorded audio clips are played to "interact" with a consumer with the intent to make the consumer believe s/he is communicating with a live person.

24. A concise summary of each of the four calls follows:

    a. On January 16, 2020, Plaintiff answered a call from Defendant where Defendant sought donations for its political PAC. In that call Defendant utilized "soundboard" technology which purported to be a man named "Joe." The voice at times sounded computerized and at times sounded like a live person. As the interaction progressed, it was clear Plaintiff was not speaking with an actual person but with a soundboard system and the natural sounding voice was pre-recorded. The voice on the other

end of the line used awkward and contextually inappropriate phrases. For instance, when the voice asked Ms. Bennett if she would donate money to the PAC, Bennett responded by saying she needed to learn more about the organization and what it does. Instead of telling Ms. Bennett about the PAC and its mission, the voice responded by saying "uh huh, I completely respect that. A lot of folks of tightening their belts." The awkward folksiness that was supposed make the soundboard sound authentic is what ultimately indicated to Plaintiff that she was speaking with software rather than a person. Later in that interaction, when the soundboard voice requested a donation for Defendant, Ms. Bennett reiterated "I don't even know who this company is." Again, rather than responding to Plaintiff's statement by providing her information about the organization, the voice responded "yeah… uh huh… you can either do it today with a card or it can take three to five days to reach you." Plaintiff then hung up.

b. February 19, 2020, Plaintiff again received a call from Defendant which began with a soundboard voice purporting to be a man named "Joe" asking for the "head of the household". The voice once again sounded at times to be computerized and at times to be clips of a live person. The interaction contained the same awkward and contextually inappropriate responses from Defendant's software. The call was then transferred to a voice purporting to be "Michelle", which also sounded computerized/automated.

    c. On March 10, 2020, when Plaintiff answered Defendant's calls, a soundboard voice purported to be "Brittany" asked to speak with the "head of the household" asking for a "generous donation" in a clearly computerized voice. Ms. Bennett quickly terminated the conversation.

    d. On March 11, 2020, a soundboard voice purporting to be "Brittany" called asking once again for the "head of the household" and asking for a donation once again. Ms. Bennett again quickly terminated the conversation.

25. Defendant's calls were not made for "emergency purposes".

26. As a result of the foregoing, Plaintiff experienced stress, annoyance and a sense of an invasion of privacy.

## COUNT I
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)

27. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

28. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

23. Defendant initiated multiple telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or automated or pre-recorded voice.

24. The dialing system used by Defendant to call Plaintiff's cellular telephone calls telephone numbers without being prompted by human intervention before each call.

25. The dialing system used by Defendant to call Plaintiff has the present and/or future capacity to dial numbers in a random and/or sequential fashion.

26. Defendant's calls were not made for "emergency purposes."

27. Defendant's calls to Plaintiff's cellular telephone were without any prior express consent.

28. Defendant contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since November of 2004.

29. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

30. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

31. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT II**
**DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c)[1]**

32. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

---

[1] In its motion to dismiss, Defendant argues that Defendant is exempt from the Do Not Call Registry due to its non-profit status. However, in the case McEwen v NRA of Am., 2021 U.S. Dist. LEXIS 72133 (D. Me. April 14, 2021), the District of Maine cited to the case Zimmerman v Cambridge Credit Counseling Corp., 409 F.3d 473 (1st Cir. 2005), which held that it must be determined whether an organization truly "operates as a non-profit." The categorization as a 503(c) is not enough in itself to be exempt. That is not necessarily to say that Defendant operates in a manner that is nefarious or improper. Rather it is to say it is the Defendant's burden to establish the applicable exemption and registration as a non-profit or PAC is not in itself sufficient to draw that conclusion. Discovery is necessary for that analysis.

33. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered their telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

34. Defendant contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since November of 2004.

35. Defendant claims to be exempt from the Do Not Call list due to purported non-profit/PAC status, however exemption is an affirmative defense which requires a fact-specific analysis which has not yet occurred.

36. Defendant called Plaintiff on multiple occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

37. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

38. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

39. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**Wherefore**, Plaintiff, **Tawni Bennett,** respectfully prays for judgment as follows:

    a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

  b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

  c. Additional statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(C);

  d. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

  e. Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c);

  f. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and

  g. Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

**Please take notice** that Plaintiff, **Tawni Bennett**, demands a jury trial in this case.

Respectfully submitted,

Dated: 06/11/2021

By: /s/ Amy L. Bennecoff Ginsburg
Amy L. Bennecoff Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
Email: aginsburg@creditlaw.com

PLAINTIFF'S AMENDED COMPLAINT