IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Tawni Bennett,<br><br>   Plaintiff,<br><br> v.<br><br>Veterans Aid PAC, Inc.,<br><br>   Defendant. | Civil Action No. Case 4:21-cv-00340-ALM<br><br><br><br>**Jury Trial Demanded** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

**Tawni Bennett** (Plaintiff), by and through her attorneys, responds with her Memorandum of Law in Opposition to the Motion to Dismiss Amended Complaint filed by Defendant **Veterans Aid PAC, Inc.** ("Veterans Aid PAC" or "Defendant"):

**I. STATEMENT OF RELEVANT FACTS**

At all times relevant hereto, Plaintiff resided in Denton, Texas. (Am. Compl. ¶ 10.) Plaintiff's cell phone number has been on the Do Not Call registry since November 15, 2004. (Am. Compl. ¶ 18.) When contacting Plaintiff on her cellular telephone, Defendant (directly and/or through its agents) used an automatic telephone dialing system and automatic and/or pre-recorded messages. (Am. Compl. ¶ 19.) While Plaintiff was annoyed and aggravated by the calls, because the identity of Defendant was not immediately apparent, she engaged in attempted conversation with Defendant for investigative purposes and for the purpose of ascertaining Defendant's identity. (Am. Compl. ¶ 20.) Each call that Plaintiff answered began with a pre-recorded voice or message. (Am. Compl. ¶ 21.)

Defendant placed calls to Plaintiff's cell phone ending in 0990 on dates including but

not limited to: January 16, 2020, February 19, 2020, March 10, 2020 and March 11, 2020. (Am. Compl. ¶ 22.)

When Plaintiff answered the calls, it was apparent that Defendant utilized "soundboard technology" where pre-recorded audio clips are played to "interact" with a consumer with the intent to make the consumer believe s/he is communicating with a live person. (Am. Compl. ¶ 23.)  A concise summary of each of the four calls follows:

    a. On January 16, 2020, Plaintiff answered a call from Defendant where Defendant sought donations for its political PAC.  In that call Defendant utilized "soundboard" technology which purported to be a man named "Joe."  The voice at times sounded computerized and at times sounded like a live person.  As the interaction progressed, it was clear Plaintiff was not speaking with an actual person but with a soundboard system and the natural sounding voice was pre-recorded.  The voice on the other end of the line used awkward and contextually inappropriate phrases.  For instance, when the voice asked Ms. Bennett if she would donate money to the PAC, Bennett responded by saying she needed to learn more about the organization and what it does.  Instead of telling Ms. Bennett about the PAC and its mission, the voice responded by saying "uh huh, I completely respect that. A lot of folks of tightening their belts."  The awkward folksiness that was supposed make the soundboard sound authentic is what ultimately indicated to Plaintiff that she was speaking with software rather than a person.  Later in that interaction, when the soundboard voice requested a donation for Defendant, Ms. Bennett reiterated "I don't even know who this company is."  Again, rather than responding to Plaintiff's statement by providing her information about the organization, the voice responded "yeah… uh huh… you can either do it today with a card or it can take three to five days to reach you."  Plaintiff then hung up.

    b. February 19, 2020, Plaintiff again received a call from Defendant which began with a soundboard voice purporting to be a man named "Joe" asking for the "head of the household".  The voice once again sounded at times to be computerized and at times to be clips of a live person.

    The interaction contained the same awkward and contextually inappropriate responses from Defendant's software. The call was then transferred to a voice purporting to be "Michelle", which also sounded computerized/automated.

  c. On March 10, 2020, when Plaintiff answered Defendant's calls, a soundboard voice purported to be "Brittany" asked to speak with the "head of the household" asking for a "generous donation" in a clearly computerized voice. Ms. Bennett quickly terminated the conversation.

  d. On March 11, 2020, a soundboard voice purporting to be "Brittany" called asking once again for the "head of the household" and asking for a donation once again. Ms. Bennett again quickly terminated the conversation.

((Am. Compl. ¶ 24.)

  AS a result of the foregoing Plaintiff filed suit against Defendant alleging violations of the Telephone Consumer Protection Act 47 U.S.C. §227(b) ("TCPA").

## II. ARGUMENT

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).

  Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim for which relief can be granted." When considering a motion to dismiss filed pursuant to a Rule 12(b)(6), a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); DeMoss v. Crain, 636 F.3d 145, 152 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While plausibility requires more than "a sheer possibility that a defendant has acted unlawfully, a plaintiff need not "prove its case at the pleading stage," CyWee Grp. Ltd. v.

Huawei Device Co., No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 135491, at *14 (E.D. Tex. Aug. 10, 2018).

On a 12(b)(6) motion, a "complaint must be liberally construed in favor of the plaintiff, and all well-pleaded facts must be taken as true," but "[l]egal conclusions are not entitled to the assumption of truth." Duke Energy Intern., L.L.C. v. Napoli, 748 F. Supp. 2d 656, 665 (S.D. Tex. 2010) (Atlas, J.) (internal quotation marks and citations omitted). "[T]he burden is on the moving party to prove that no legally cognizable claim for relief exists." Constr. Cost Data, LLC v. Gordian Grp., Inc., No. H-16-114, 2017 U.S. Dist. LEXIS 77481, at *10-11 (S.D. Tex. Apr. 24, 2017) *citing* 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1357 (3d ed. 2017);  ("under Rule 12(b)(6), the defendant bears the burden of proving that no relief could be granted"). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." Constr. Cost Data, 2017 U.S. Dist. LEXIS 77481, at *10-11 *citing* Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

### B.  The Amended Complaint States a Claim Under 47 U.S.C. § 227(b).

Count I of the Amended Complaint asserts a claim under 47 U.S.C. § 227(b) of the TCPA.  That provision prohibits callers from "placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes." 47 U.S.C. § 227(b)(1)(A)(iii).

In its Memorandum, Defendant asks the Court to undertake an extraordinary and unprecedented act of judicial activism which effectively re-writes the TCPA, ignores the plain language of the statute and disregards the canons of construction of the English language. Specifically, Defendant cites to the statutory language prohibiting calls using an automatic

telephone dialing system or automated/pre-recorded voice "to any telephone number assigned to a paging service, *cellular telephone service,* specialized mobile radio service, or other radio common carrier service, *or any service* for which the called party is charged for the call." (Defendant's Memorandum, p. 2 *citing* 227(b)(1)(A)(iii)).

Defendant then proclaims it is "clear" that "only calls 'for which the called party is charged for the call'" constitute a violation. However, declaring something "clear" does not make it so. Where there have been thousands of TCPA cases adjudicated since 1991, it is telling that Defendant does not cite to a single one of them in support of its proposed reading of the statute. While Defendant does not cite to any case that adopts its proposed reading, there have been a handful of courts that have addressed the precise argument raised by Veterans Aid. Unfortunately for Defendant, those cases explicitly rejected that argument as contrary to the plain language of the statute and the canons of construction. For instance in 2014, the Eleventh Circuit case <u>Osorio v. State Farm Bank, F.S.B</u>., 746 F.3d 1242 (11th Cir. 2014) held:

> The United States Court of Appeals for the Eleventh Circuit goes back to the basic question of whether the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, itself exempts all autodialed calls for which there is no charge. **The applicable canons of construction indicate that it does not.** The Act prohibits autodialed calls to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. 47 U.S.C.S. § 227(b)(1)(A)(iii). The rule of the last antecedent requires the phrase for which the called party is charged for the call, to be applied to the words or phrase immediately preceding, i.e., any service, and not to be construed as extending to or including others more remote; namely, paging, cellular telephone, or mobile radio services. 47 U.S.C.S. § 227(b)(1)(A)(iii). The Eleventh Circuit therefore **presumes that Congress did not intend the phrase "for which the called party is charged for the call" to apply to cellular telephone services.**

Osorio, 746 F.3d 1242, 1246 (emphasis added); *See also* Taylor v. Universal Auto Grp. I, Inc., No. C 13-5245 KLS, 2014 U.S. Dist. LEXIS 94955, at *10 (W.D. Wash. July 1, 2014) (adopting Osorio's reasoning on being charged per call).

Section 227(b) prohibits automated calls to certain devices, cell phones being one of them, and devices for which the called party is charged per call being another.  There is no reason for the Court to read the statute as Defendant proposes and aside from declaring the argument "clear", Defendant makes no true argument as to why the Court should adopt that interpretation.  Defendant is asking this Court to take an extraordinary step which defies the language of the law and the rules of construction of the English language to re-write and effectively invalidate a widely popular law passed by Congress and signed by President George H.W. Bush in 1991.  Such a call for judicial activism should not be sanctioned by the Court.

Because the Amended Complaint describes calls with an automated voice to Plaintiff's cell phone, the Amended Complaint states a claim under § 227(b) of the TCPA.  Defendant's Motion to Dismiss Count I of the Amended Complaint must be denied.

**C.   The Amended Complaint States a Claim Under 47 U.S.C. § 227(c).**

Count II of the Amended Complaint asserts a claim under § 227(c) of the TCPA predicated on Defendant's solicitation calls to Plaintiff's phone while her number was registered on the National Do Not Call Registry.

47 U.S.C.S. § 227(c)(5) of the TCPA provides:

> Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

1. There is no statutory provision or regulatory code that exempts calls made by political organizations from the Do Not Call registry.

In its Memorandum in Support of its Motion to Dismiss, Defendant makes a bold – and ultimately unsubstantiated- proclamation about the scope of the Do Not Call Registry and claims the Do Not Call Registry exempts calls by Political Action Committees.  (*See* Defendant's Memorandum, pp. 3-4.)  Defendant cites no statutory language from the TCPA or regulatory code which codifies this purported "exemption."  That omission was not an oversite by Defendant.  Rather, the Defendant PAC cites to no statutory authority or regulatory code in support of its proposed "exemption" from the Do Not Call Registry because there is no statutory language or regulatory code that actually codify such an exemption

Rather than citing to the TCPA itself or the accompanying Code of Federal Regulations, Defendant cites to a 2003 FCC Report and Order issued with the introduction of the Do Not Call Registry,[1] ***which does not actually create or even identify an exemption for political calls***. (Defendant's Memorandum, p. 4.)    Specifically, the quote from the FCC Report cited by Defendant reads

> We also note that calls that do not fall within the definition of 'telephone solicitation' as defined in section 227(a)(3) will not be precluded by the national do-not-call list. These *may* include surveys, market research, political or religious speech calls.

(Defendant's Memorandum, p. 4 *citing* 17 FCC Rcd 14014, pp. 65-66 (emphasis added)).

A report which prospectively describes an exemption which *may* come into effect on some future date is not an exemption from a statute.  If the IRS issued a report which described a possible future tax exemption but such an exemption were never codified, a taxpayer could

---

[1] The FCC Report and Order cited by Defendant In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 , 18 FCC Rcd 14014, (F.C.C. June 26, 2003) was issued in June 26, 2003.  The FTC announced that the Do Not Call Registry was "open" on June 27, 2003.  *See* Federal Trade Commission: "National Do Not Call Registry Opens" (June 27, 2003) *available at*:  https://www.ftc.gov/news-events/press-releases/2003/06/national-do-not-call-registry-opens

not reasonably be said to be exempt from an existing tax. If law enforcement issued a report outlining possible future exemptions for otherwise criminal conduct, without an actual exemption being codified, it would not serve refuge from a sentence for said conduct. Here, in 2003, the FCC reported that political speech *may* be subject to an exemption. In 2021, that is still true. The FCC or FTC still *may* exempt calls from PACs from the requirements of the Do Not Call Registry. However, at this time, those agencies have not done so.

As was foreshadowed by the 2003, the FTC ultimately did codify exemptions to the Do Not Call Registry for charitable organizations and calls to solicit donations to same. For instance, 16 C.F.R. § 310.44 lists an exemption for calls "whose goods or services are being offered or made on behalf of the *charitable organization* for which a charitable contribution is being solicited". Likewise, 16 C.F.R. § 310.6 (a)5 provides: "Solicitations to induce *charitable contributions* via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule." Those provisions do not provide a similar exemption for political PACs.

Defendant is asking the Court to dismiss Count II of the Amended Complaint based on a purported exemption from that provision. An exemption is an affirmative defense where the Defendant bears the burden of proof. *See* Soto v. William's Truck Serv., 2013 U.S. Dist. LEXIS 17223, at *7-8 (N.D. Tex. Feb. 8, 2013) (Plaintiff need not disprove a defendant's affirmative defense. The defendant bears that burden). Because Defendant has failed to identify the statutory provision or regulatory code which actually establish the "exemption" upon which it relies, the Motion to Dismiss Count II of the Amended Complaint must be denied.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

2. <u>To the Extent the Court is Inclined to Adopt Non-Codified Guidance from Administrative Agencies for the Purported Political Call Exemption, the Subject Calls Fall Outside the Parameters of "Political Calls" Under the FTC's Standard, Because the Calls Contain an Explicit "Sales Pitch."</u>

Because there is no exemption for political calls in the body of the TCPA or accompanying code, the analysis as to the Defendant's argument should end there. However, even if the Court accepts the informal guidance on the FTC's website which Defendant cites as though it were a codified exemption, the calls made by Veterans Aid to Tawni Bennett still fall outside the parameters of that "exemption."

Specifically, in its footnote 1, Defendant cites to the FTC's website listing "FAQ's" for the Do Not Call Registry, which reads as follows:

> "Are any other types of calls still allowed under FTC rules if I'm on the Registry? The rules allow
> - political calls
> - charitable calls
> - debt collection calls
> - purely informational calls
> - surveys
>
> But these calls **can't also include a sales pitch**."

(Defendant's Memorandum, p. 4, FN 1 *citing* Federal Trade Commission: "National Do Not Call Registry FAQ's", available at https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs (emphasis added)).

Here, the Amended Complaint describes Defendant's "sales pitches" with specificity. (Am. Compl., ¶ 24(a)-(d)).  Namely, the Amended Complaint describes Defendant's soundboard technology repeatedly requesting donations from Ms. Bennett and describing the ways such a donation could be made. (Id.)

Accordingly, even if the informal "exemptions" to which Defendant cites were legally effectual, the subject calls would not fall within their scope. Accordingly, Defendant's Motion to Dismiss Count II of the Amended Complaint must be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Veterans Aid PAC's motion to dismiss Plaintiff Tawni Bennett's Amended Complaint should be DENIED.

Respectfully submitted,

Dated: 07/22/2021

By: /s/ Jacob U. Ginsburg
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
Email: aginsburg@creditlaw.com

### CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg hereby certify that a true and correct copy of the foregoing memorandum was served on all parties of record via ECF.

/s/ Jacob U. Ginsburg