# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TAWNI BENNETT,<br>   *Plaintiff,*<br><br>v.<br><br>VETERANS AID PAC, INC.,<br>   *Defendant.* | §<br>§<br>§  Civil Action No. 4:21-CV-340<br>§  Judge Mazzant<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion for Summary Judgment (Dkt. #30) and Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. #34). Having considered the motions and relevant pleadings, the Court finds both motions should be **GRANTED in part** and **DENIED in part.**

### BACKGROUND

This action arises out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Dkt. #6). Defendant Veterans Aid Pac, Inc. (the "VA") is a political action committee. The VA regularly solicits financial contributions in the state of Texas.

Plaintiff Tawni Bennett ("Bennett"), a Texas citizen, received numerous telephone calls from the VA on her cellular telephone with area code "214." These phone calls were allegedly placed through an automated telephone dialing system ("ATDS") (Dkt. #6 ¶ 15). The VA allegedly utilized "soundboard technology" to play pre-recorded audio clips on calls soliciting donations (Dkt. #6 ¶ 23). Bennett received the VA's calls and messages despite registering her telephone number with the Federal Trade Commission's (the "FTC") Do Not Call Registry on November 15, 2004 (Dkt. #6 ¶ 18).

On April 30, 2021, Bennett brought claims for violation of Sections 227(b) and 227(c) of

the TCPA (Dkt. #1). Bennett seeks all actual, statutory, and treble damages (Dkt. #6 at pp. 7–8). On June 11, 2021, Bennett filed her First Amended Complaint (Dkt. #6). The VA answered on August 16, 2021 (Dkt. #21).

On February 21, 2022, the VA moved for summary judgment (Dkt. #30). Bennett responded on March 14, 2022 (Dkt. #37). The VA filed its reply on March 21, 2022 (Dkt. #39).

On February 24, 2022, Bennett moved for summary judgment on only liability for her Section 227(b) claim (Dkt. #34). The VA responded on March 14, 2022 (Dkt. #36) and filed an Affidavit in opposition (Dkt. #38). Bennett replied on March 22, 2022 (Dkt. #40).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential

elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

On her claim for violation of Section 227(b), Bennett argues she is entitled to a judgment on liability because the VA called her cellphone by use of an artificial prerecorded voice without her consent (Dkt. #34). Bennett also seeks a judgment on the VA's affirmative defense of prior express consent.

In its motion for summary judgment, the VA contends Bennett is not entitled to treble damages for any alleged violation of Section 227(b) (Dkt. #30). The VA also argues Bennett's Section 227(c) claim should be dismissed because the VA is not the type of entity the TCPA

regulates, and its calls do not constitute "telephone solicitations" within the meaning of the TCPA (Dkt. #30).

The Court will begin with the parties' arguments regarding Section 227(b).

### I.     Section 227(b)

"Section 227(b) of the TCPA makes it unlawful for any person 'to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call,' or 'to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.'" *Cunningham v. Greenstar Capital Sols., LLC*, No. 4:18-CV-161, 2018 WL 4572711, at *4 (E.D. Tex. Aug. 1, 2018) (citations omitted). Bennett seeks a judgment on liability under Section 227(b), and the VA seeks a judgment on the availability, or lack thereof, of treble damages for any alleged violation of Section 227(b).

#### A.  Liability

Bennett asserts the VA made calls to her cellphone using a pre-recorded voice, in violation of Section 227(b) (Dkt. #34). Bennett has the burden to prove "*all* of the essential elements" of her claim to succeed on her motion. *Fontenot*, 780 F.2d at 1194.

In Bennett's Declaration (Dkt. #34, Exhibit 10), Bennett states she has not owned a landline phone for her home during the relevant time period of this suit (Dkt. #34, Exhibit 10 ¶ 6). Moreover, she never uses her cellphone for business purposes (Dkt. #34 Exhibit 10 ¶ 8). Thus, Bennett uses her cellphone exclusively for personal purposes, including as a residential phone. The VA does not attempt to refute her evidence.

Further, Bennett supplied the Court with audio recordings of the telephone calls from the VA, or someone calling on behalf of the VA (Dkt. #34, Exhibits 12, 15, 16).  The Court has reviewed these recordings and notes their awkward, choppy quality—the calls did not have the natural flow of human conversation.  In addition, the caller asks Bennett to respond to prompts with specific answers so that the caller could redirect Bennett accordingly, much like selecting a number on a cellphone's keypad to redirect the call.

The VA responds that there is a genuine issue of material fact.  In support of its position, the VA relies on the deposition of Oliver Cappleman ("Cappleman"), the owner and founder of the VA (the "Deposition"). In the Deposition, Cappleman listened to the audio recordings and testified that the call "sounds like similar to some of the calls that I get, which I – which I assume that is some kind of computer calling me" (Dkt. #38, Exhibit 14 at 42:5–7).  Thus, the VA's owner admits the call sounded like a computer.  However, when pressed, Cappleman emphasized that the call "sounded like a live person" (Dkt. #38, Exhibit 14 at 42:9).  Further, the VA cites a potential language barrier as the reason for any awkwardness or choppiness.  While the Court suspects the calls were likely made using a pre-recorded voice, the Court must refrain from making any credibility determinations or weighing the evidence.  *Turner*, 476 F.3d at 343.  Because a reasonable jury could find the calls were made without using a pre-recorded voice, the Court denies Bennett's request for summary judgment on liability.  Nevertheless, the Court must also address Bennett's request for summary judgment on her lack of prior express consent to receive calls from the VA.

### B.  Affirmative Defense

Bennett argues the VA "has failed to present any evidence in support of its affirmative defense of express written consent" (Dkt. #34 at p. 12).  The VA counters that Bennett gave express

permission when she told a caller purportedly with the VA that she was interested in donating (Dkt. #36 at p. 6).

The Court starts by noting a written consent is not a *per se* requirement for establishing express prior consent. The Federal Communications Commission (the "FCC")—the government agency tasked with implementing rules and regulations enforcing the TCPA—has explained that nothing in the TCPA specifies the method through which prior express consent must be obtained. *Matter of GroupMe, Inc./Skype Communications S.A.R.L Petition For Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 F.C.C.R. 3442, 2014 WL 1266074, at *2 (F.C.C. 2014). Indeed, a plaintiff may give prior express consent merely by providing her cellphone number to a caller. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015) (holding that blood donor who provided cellular phone number on donor information form consented to receipt of text messages encouraging further donations); *see also Greene v. DirecTV, Inc.*, No. 10-C-117, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (granting summary judgment to defendants and holding that plaintiff had given "prior express consent" by providing her cell phone number to a credit reporting agency with the knowledge that potential creditors would contact her at that number to verify her identity). Thus, Bennett's reliance on a lack of evidence showing Bennett's written consent is misguided.

That said, express prior consent is an affirmative defense on which the VA bears the burden. *Cunningham v. CBC Conglomerate LLC*, No. 4:17-cv-793, 2019 WL 7500497, at *4 (E.D. Tex. Dec. 4, 2019) (citations omitted). Because the nonmovant—the VA—bears the burden of proof, Bennett may discharge her burden by showing an absence of evidence of her prior express consent. *Celotex*, 477 U.S. at 325. The Court has already acknowledged a total lack of evidence

of any written consent. In addition, Bennett stated in her declaration that she had never heard of the VA prior to receiving her first call soliciting donations to the VA (Dkt. #34, Exhibit 10 ¶ 10). Presumably, she never provided her cellphone number to an organization she was not aware of prior to receiving their calls. Indeed, in the Deposition, Cappleman stated he did not know how the VA or its third-party vendors obtained potential donors' phone numbers (Dkt. #38, Exhibit 14 at 21:18–22:9). The VA's disclosures and discovery responses confirm Cappleman's position (Dkt. #38, Exhibits 10, 13). Accordingly, the Court can find no evidence that Bennett ever provided her cellphone number to the VA or its third-party call centers.

Further, both sides attached audio recordings of the calls Bennett had regarding her potential donation to the VA. Bennett can be heard asking for any further information to be mailed to her, and she provides the caller with her physical address (Dkt. #38, Exhibits 3, 5). Bennett never indicates her assent to receive further phone calls, nor any interest in donating again. Bennett's phone records also show she only *received* phone calls from the VA's call center (Dkt. #38, Exhibit 8). All in all, Bennett has carried her burden to show the lack of evidence regarding her prior express consent. *Celotex*, 477 U.S. at 325; *Byers*, 209 F.3d at 424.

The VA's only response is that "Bennett gave express permission for a call back when she advised the caller that she was interested in donating $35" (Dkt. #36 at p. 6). However, having listened to the audio recordings, the Court cannot verify the VA's assertion. While Bennett did express interest in donating $35 to the VA, she never gave the caller permission to call again. In fact, she asked that future information and requests be mailed to her residence. None of the VA's other evidence—the phone records, the Deposition, discovery documents, and Bennett's declaration—support the VA's contention. As such, the VA has not adduced evidence demonstrating there is a genuine issue for trial on Bennett's consent. *Anderson*, 477 U.S. at 257.

In sum, prior express consent is an affirmative defense that the VA would bear the burden of proving at trial. In moving for summary judgment, Bennett pointed to the absence of any evidence to support this defense. In response, Defendant failed to adduce any evidence from which a reasonable juror could conclude that this consent was given. Therefore, Bennet is entitled to summary judgment on the VA's potential affirmative defense to Bennett's TCPA claim. The Court now turns to the issue of treble damages.

### C. Damages

"When a plaintiff succeeds on a TCPA claim, he can recover the greater of actual damages or $500 for each violation of § 227(b)(1)(A)." *Cunningham v. TechStorm*, No. 3:16-cv-2879, 2018 WL 3118400, at *5 (N.D. Tex. May 29, 2018) (citing 47 U.S.C. § 227(b)(3)). The TCPA permits a plaintiff to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation," which may be increased "not more than 3 times" if a court finds that "the defendant willfully or knowingly violated this subsection." 47 U.S.C. § 227(b)(3)(B). A willful or knowing violation does "not requir[e] bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *Cunningham v. Air Voice*, No. 4:19-cv-96, 2020 WL 9936139, at *7 (E.D. Tex. Feb. 14, 2020); *see also Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).

The VA argues Bennett cannot show it willfully or knowingly violated Section 227(b) because the VA utilized third party vendors to handle fundraising efforts, including the calls made to Bennett (Dkt. #30 at p. 4). Bennett contends the determination of whether the VA willfully or knowingly violated the TCPA is better suited for the jury. The Court agrees. There is a fact question regarding whether the VA knew, or should have known, that its third-party call centers would violate the statute. *Texas v. Am. Blast Fax, Inc.*, 159 F. Supp. 2d 936, 940 (W.D. Tex.

2001) (finding that though substantial, unrefuted evidence had been presented, issues of willfulness and amount of damages, among other factors, remained for the jury to consider). Therefore, the Court denies the VA's request for summary judgment on treble damages.

## II. Section 227(c)

Section 227(c)(5) of the TCPA provides a private cause of action where an individual or entity: (1) initiated any "telephone solicitation" (2) to Plaintiff's telephone number (3) on the Do Not Call Registry, a national database of consumers who object to receiving "telephone solicitations." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c); Pub. L. No. 102-243, 105 Stat. 2394 at § 3. The term "telephone solicitation" in the TCPA means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term *does not include* a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) *by a tax exempt nonprofit organization.*" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14) (emphasis added).

The VA argues it cannot have violated Section 227(c) because: (1) it is a tax-exempt nonprofit organization; and (2) its calls do not encourage the purchase or rental of, or investment in, property, goods, or services—rather, the calls were for the purpose of soliciting donations (Dkt. #30). Bennett responds that the VA's IRS status as a nonprofit does not mean the VA is exempt from Section 227(c). Moreover, Bennett argues the calls sought money for lobbying *services*, not donations, and thus the VA's calls were telephone solicitations within the meaning of the TCPA.

First, "a call made by or on behalf of a non-profit organization [] is not a telephone solicitation." *Morris v. Copart*, No. 4:15-cv-724, 2016 WL 11472826, at *8 n.10 (E.D. Tex.

9

Sept. 22, 2016) (citations omitted). The VA is a tax-exempt, non-profit organization. Bennett points to a decision in which a district court permitted the factfinder to determine whether an organization is a nonprofit (Dkt. #37 at pp. 9–10, citing *McEwen v. NRA of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 1414276, at *5 (D. Me. Apr. 14, 2021)). However, the Court is not persuaded by an unpublished opinion from a different circuit that adopts a novel position no other court appears to follow. Moreover, a for-profit telemarketer is deemed to make calls "on behalf of" a tax-exempt charitable organization when it made telephone solicitations pursuant to a fundraising program. *Id.*; *Wengle v. DialAmerica Mktg., Inc.*, 132 F. Supp. 3d 910 (E.D. Mich. 2015), as amended, (Oct. 2, 2015). Thus, even if the VA's third-party call centers are for-profit, because they made calls in an effort to raise donations for a tax-exempt charitable organization, Section 227(c) would not apply.

Second, even if the VA for some reason does not qualify as a tax-exempt nonprofit organization, a request for donations does not constitute a telephone solicitation. In the 2003 FCC Order that established the National Do Not Call Registry, the FCC also addressed the scope of the exemption for nonprofits. *See* 18 FCC Rcd. at 14087–14090. The FCC noted that it had received inquiries about "calls made jointly by nonprofit and for-profit organizations" and that it had requested public comments concerning the scope of the Nonprofit Exemption. *Id.* at 14087–14088, ¶ 126. After considering the comments, the FCC confirmed that "*calls made by a for-profit telemarketer hired to solicit the purchase of goods or services or donations on behalf of a tax-exempt nonprofit organization are exempted from the rules on telephone solicitation*." *Id.* at 14089, ¶ 128 (emphasis added). Thus, regardless of whether the VA sought donations or money to purchase lobbying services, its calls are exempt. Indeed, several state consumer protection statutes with parallel language to the TCPA explicitly include donations in their definitions of

10

"telephone solicitation." *See, e.g.*, A.S. 45.50.475(g)(4) (Alaska) (defining "telephone solicitation" as "solicitation by a person by telephone of a customer at the residence of the customer for the purpose of encouraging the customer to purchase property, goods, or services, *or make a donation*" (emphasis added)); N.C. Gen. Stat § 75-101(9) (North Carolina) (defining "telephone solicitation" as a "voice communication . . . for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services . . . *or obtaining a charitable donation*" (emphasis added)); R.C.W.A. 80.36.390(1) (Washington) (defining "telephone solicitation" as "the unsolicited initiation of a telephone call by a commercial or nonprofit company or organization to a residential telephone customer and conversation for the purpose of encouraging a person to purchase property, goods, or services *or soliciting donations of money, property, goods, or services*" (emphasis added)).

Accordingly, Bennett's claim for violation of Section 227(c) of the TCPA fails as a matter of law and this claim will be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #30) be **GRANTED in part** and **DENIED in part.**

It is further **ORDERED** that Plaintiff's Amended Motion for Partial Summary Judgment (Dkt. #34) be **GRANTED in part** and **DENIED in part.**

Defendant Veterans Aid Pac, Inc.'s affirmative defense to Plaintiff Tawni Bennett's Section 227(b) claim fails as a matter of law. However, Plaintiff's claim under Section 227(c) of the Telephone Consumer Protection Act is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**SIGNED this 23rd day of May, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE